**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

NANCY HYDER,

      Plaintiff,

   v.

KEMPER NATIONAL SERVICES, INC.;
LUMBERMAN'S MUTUAL INSURANCE CO.;
BROADSPIRE SERVICES, INC.; VODAFONE
AMERICAS, INC.; VODAFONE AMERICAS,
INC., SHORT TERM DISABILITY PLAN;
VODAFONE AMERICAS, INC., LONG TERM
DISABILITY PLAN; VODAFONE EMPLOYEE
HEALTH PLAN; VODAFONE EMPLOYEE DENTAL
PLAN; VERIZON WIRELESS, INC.; and
DOES 1 TO 50, inclusive,

      Defendants.

_____/

No. C 05-1782 CW

ORDER
ADJUDICATING
PLAINTIFF'S ERISA
CLAIMS

    Defendants Kemper National Services, Inc. (Kemper),

Lumberman's Mutual Insurance Co. (Lumberman's), Broadspire

Services, Inc. (Broadspire), Vodafone Americas, Inc., Long Term

Disability Plan (the LTD Plan), and Vodafone Americas, Inc., Short

Term Disability Plan (the STD Plan) (collectively, moving

Defendants[1]) move pursuant to Federal Rule of Civil Procedure 56,

---

[1]In this Order, all references to "Defendants" refer to the
moving Defendants only.

1  or in the alternative Rule 52, for judgment on Plaintiff Nancy

2  Hyder's Employee Retirement Income Security Act (ERISA) claims

3  against them.  Plaintiff opposes the motion and separately cross-

4  moves for summary adjudication of her ERISA claims.  Defendants

5  oppose the cross-motion.  The matters were heard on January 13,

6  2006.

7       Having considered all of the papers filed by the parties and

8  oral argument on the motions, the Court grants the motions in part

9  and denies them in part, as explained below.

10                          BACKGROUND

11      The facts below are undisputed unless otherwise noted.

12      According to her complaint, Plaintiff is a former employee of

13  non-moving Defendant Vodafone Americas, Inc. (Vodafone).  The STD

14  Plan and the LTD Plan were established for Vodafone employees and

15  are employee welfare benefit plans as defined by ERISA, 29 U.S.C.

16  § 1002.  Both plans are administered by Kemper and its successor-

17  in-interest, Broadspire.  The STD Plan is self-funded, but the LTD

18  Plan purchased insurance from Lumberman's.

19  I.  Plan Documents

20      According to the Plan Documents, which address both the STD

21  Plan and the LTD Plan, the STD Plan covers replacement of some or

22  all earnings of a Vodafone employee if he or she has a "qualifying

23  disability," defined as "any medically determinable physical or

24  mental condition arising from an illness, pregnancy, or injury that

25  prevents you from performing the essential duties of your job."

United States District Court
For the Northern District of California

2

P0416.[2]  "Documentation, including physician certification and
objective medical evidence," is required to support the claimed
disability.  Id.  No provision of the subsection pertaining to the
STD Plan specifically vests discretion in Kemper to interpret the
Plan or adjudicate claims.  In order to file a STD claim,
applicants are instructed to,

> [c]all the Claims Adminstrator (Kemper) at [number] no later
> than your eighth calendar day of absence to initiate the
> claims process.  If you expect that your disability will last
> more than seven days, call sooner.  Be prepared to provide
> your treating physician's name and telephone number, the date
> of your first day of absence, the nature of your disability,
> your regular work schedule, and your supervisor's name and
> telephone number.
>      If you are unable to call, have a family member or your
> attending physician call for you.  Failure to call promptly
> may disqualify you from receiving benefits.

P04020 (emphasis in the original).  The Plan Documents further
provide that "STD benefits will be denied or end" if an applicant
fails to "[f]ile your claim by calling Kemper by your eighth
calendar day of absence."  P0422.  However, "[i]f Kemper and
Vodafone determine that your failure to meet these conditions was
due to reasonable cause, your benefits may be reinstated for any
period you were not in compliance."  Id.

The LTD Plan provides benefits equal to sixty percent of
earnings.  P0424.  Disability means

> that a significant change in your physical or mental condition
> due to:
>      1.  Accidental bodily injury;
>      2.  Sickness;
>      3.  Mental Illness;
>      4.  Substance Abuse; or
>      5.  Pregnancy,

---

[2]Unless otherwise noted, citations refer to the administrative
record attached to the First Penrose Declaration.

3

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

> began on or after your Coverage Effective Date and has caused your inability to perform, during the Benefit Qualifying Period and the following 24 months, the Essential Functions of your Regular Occupation or of a Reasonable Employment Option offered to you by the Company, and as a result you are unable to earn more than 80% of your Pre-disability Monthly Income.
>
> After that, you must be so prevented from performing the Essential Functions of any Gainful Occupation that your training, education and experience would allow you to perform.

Id. However, in the case of disabilities resulting from or caused by "Self-Reported Conditions," defined as conditions which "can not be verified and measured using generally accepted standard medical procedures and practices," including "fatigue, loss of energy [and] pain," benefits are limited to a total of twenty-four months. P0425. A subsection entitled "Benefit Qualifying Period" explains that an employee may become qualified for benefits under the LTD Plan after 180 days of disability, exhaustion of sick leave or termination of salary continuation or STD benefits, whichever occurs last. P0424.

"Coverage" under the LTD Plan terminates on the date an employee's employment terminates, or sooner if the company's participation or the employee's eligibility changes. P0426. On the other hand, benefits once received terminate only upon one of ten conditions, e.g. "the date you are no longer disabled." Id.

The Plan Documents instruct LTD applicants to "notify Kemper or Kemper's authorized representative that you are unable to work due to sickness or injury as soon as reasonably possible, but in no event more than 30 days after the start of the period for which you are filing a claim." Id. An applicant may then send Kemper "written proof . . . of your claim" after fifteen days if Kemper has not provided the applicant with forms. Id.

4

A separate "Proof of Loss" subsection explains that "proof that you are unable to work due to sickness or injury" must be provided to Kemper "no later than 30 days prior to the end of the Benefit Qualifying Period." P0427. However, "[i]f it was not reasonably possible to provide proof that you were unable to work due to sickness or injury within that time frame, it will not affect the validity of your claim as long as you provide such proof as soon as reasonably possible thereafter." Id.

For the LTD Plan, Kemper "reserves full discretion and authority to . . . administer claims, and interpret all policy terms and conditions." P0433. A separate agreement between Lumberman's and Natlsco, Inc.,[3] grants the latter "discretionary authority to interpret the terms of the Policy and to otherwise determine a claimant's eligibility for benefits throughout the claim process." LMB0004.

The Plan Documents provide that a claimant may not start a legal action until "60 days after proof of your claim has been given" or "[m]ore than three years after the date when your proof of claim was required." P0432. The parties dispute the meaning of this contractual limitation clause.

Benefit amounts "will be offset by the amounts of any other benefits" which the recipient is entitled to receive as a result of the same period of disability, and Kemper reserves the right to collect overpayments. P0414, P0427.

---

[3]Natlsco, Inc., is an entity related to Kemper and is now also known as Broadspire.

United States District Court
For the Northern District of California

II.  Plaintiff's Disability and Application for Benefits

Plaintiff was initially diagnosed with mononucleosis in December, 1999.  HYD112.  At that time, she worked for Vodafone as an Assistant Treasurer in San Francisco.  At the advice of her doctor, she worked from home and only a few hours a day.  When she inquired about filing for short-term disability benefits, Plaintiff later told Kemper, she was informed by Josh Lucas, a Vodafone Human Resources Manger,

> that since I was a salaried employee, and not paid on an hourly basis, any time I spent working from home on a particular day was considered a normal workday.  Therefore, it was not necessary to file for short-term disability insurance, since Vodafone would continue to pay me my normal salary as long as I worked part-time from home.

HYD112.[4]  Plaintiff went back to work part-time in January and full-time on March 31, 2000.  Upon returning to full-time employment, Plaintiff was assigned to work in England on a rotating basis, necessitating a trans-Atlantic round-trip every three weeks.  Plaintiff agreed to stay on this rotational assignment until April 1, 2001.

On January 30, 2001, while working in England, Plaintiff became sick with what she believed to be flu.  She described her condition as,

> totally exhausted, both physically and mentally.  It was virtually impossible for me to concentrate on any cognitive exercise.  I felt disoriented and dizzy when standing up.  I was experiencing night sweats, fever, chills, muscle aches, swollen glands and sore throat.

HYD112.  Although Plaintiff tested positive again for

---

[4]Facts relating to Plaintiff's interactions with Vodafone are drawn from the information she supplied to Kemper, and are assumed to be true for the purpose of this motion only.

United States District Court
For the Northern District of California

mononucleosis, her doctor believed that the illness was attributable to another cause.  Plaintiff again began to work from home part-time on her doctor's orders.  On April 2, 2001, after she returned to the United States, Plaintiff met with Mark Hickey, Vodafone Vice-President of Human Resources.  He gave her a severance notice which explained that unless she obtained another job within Vodafone within sixty days, she would be terminated on June 1, 2001.  The letter offered Plaintiff a $105,854.60 severance package if she would agree to release any claims she might have against Vodafone.  Second Penrose Decl., Ex. A, April 1, 2001 Letter from Mark A. Hickey to Nancy Hyder.  Plaintiff asked Mr. Hickey for information about the company's disability plan and how disability would affect her severance package.  Mr. Hickey told Plaintiff he would contact her once he found more information, but he never did so.  Plaintiff claims that since she no longer had job responsibilities or an office in San Francisco, "[i]t was therefore understood that I was relieved of duty, and would be excused with pay until June 1, 2001."  HYD113.

In May, 2001, Plaintiff contacted her doctor and explained that she was still experiencing the same symptoms.  The doctor "excused" Plaintiff from work until November 1, 2001.  HYD113.

In a July 6, 2001 letter to Mr. Hickey regarding Vodafone's request that she sign a release of her claims against it, Plaintiff again asked for "information on how my disability affects my termination/severance benefits."  HYD227.  Vodafone Human Resources Manage Bob Rosemeyer responded in a July 18, 2001 letter,

Mark said he did not recall a conversation with you regarding

United States District Court

For the Northern District of California

> your health, or your request for information on how your
> disability would affect your termination and severance
> benefits.  You state that you were disabled on the date of
> your termination on June 1, 2001, yet our records do not
> indicate that a claim was filed with Kemper, our Short Term
> Disability plan administrator.  But even if you were
> determined to have been disabled and eligible for STD
> benefits, those benefits would have expired on your
> termination date.

HYD228.  On August 10, 2001, Plaintiff wrote back that she did not

understand Mr. Rosemeyer's letter, noting that she "did not even

know how or with whom to file a claim" because she was never given

the disability plan information.  HYD230-31.  She continued,

> I am very concerned there may be benefits I am entitled to as
> a disabled person that I am currently unaware of because I do
> not have access to the plan documents.  I am not comfortable
> signing the Release of Claims document Mark gave me on April
> 2nd until I understand precisely what benefits are included in
> each Vodafone benefit package I might qualify for.
>     I ask that you consider this to be my third request for
> information on the Vodafone disability plans.

HYD231.  On August 27, 2001, Mr. Rosemeyer sent Plaintiff copies of

the STD and LTD Summary Plan Descriptions.[5]  Second Penrose Decl.,

Ex. C, August 27, 2001 Letter from Bob Rosemeyer to Nancy Hyder.

He told her that she could accept Vodafone's proffered severance

benefit "without prejudice to your ability to qualify for long-term

disability benefits."[6]  Id.  Plaintiff did not accept the severance

---

[5]The Summary Plan Descriptions sent by Mr. Rosemeyer to
Plaintiff refer to her previous employer, Airtouch, which merged
with Vodafone in 1999.  The Claims Administrator referred to in the
Summary Plan Descriptions is a company called Matrix Absence
Management, Inc.  HYD238.

[6]A later draft severance agreement proposed by Vodafone would
have excepted from the general release any claims by Plaintiff
against Kemper under the LTD Plan or against Vodafone for benefits
under its retiree health plan and reduced the severance benefit to
$69,962.06.  Second Penrose Decl., Ex. E, Draft Addendum to
Severance Agreement.  Plaintiff rejected this offer.

package.

Believing that her eligibility for STD benefits had terminated on June 1 but that she could be eligible for LTD benefits after a period of 180 days of disability, Plaintiff called Kemper on December 13, 2001. According to Kemper's intake records, Plaintiff told it that her STD eligibility began on May 21, 2001, that her first full date of absence from work was also May 21, and that she had been terminated on June 1, 2001 and was currently receiving California State disability benefits. HYD097. According to Plaintiff, Angela, the Kemper representative, at first said that she did not know how to file a LTD claim if a STD claim had not been filed previously, and later told Plaintiff that filing a STD claim was a prerequisite to filing for LTD benefits. HYD114.

In a letter dated January 2, 2002, Kemper characterized Plaintiff's claim as one for STD benefits and denied it on the grounds that she had failed to call in her claim no later than her eighth day of absence from work. HYD093. The letter explained that Plaintiff could file a written request for review of this determination "within sixty (60) days from [her] receipt" of the letter. Id.

In a letter dated March 8, 2002, Plaintiff appealed this determination on two grounds: (1) that she was not provided with information about Vodafone's disability plan, that Vodafone's Human Resources Manager provided her with inconsistent information, and thus that she did not know how or with whom to file a timely claim; and (2) that any failure to file for STD benefits was irrelevant to her eligibility for LTD benefits, and that her "sole intention" in

*United States District Court*
For the Northern District of California

contacting Kemper in December, 2001 was to file a LTD claim.
HYD113-114. Plaintiff emphasized that she had "no desire to claim
any benefits under the STD plan." Id. at HYD114. She informed
Kemper that on February 28, 2002, a specialist confirmed her
doctor's diagnosis of chronic fatigue, agreeing that the illness
prevented Plaintiff "from performing the usual and customary duties
associated with the job of Assistant Treasurer for a multi-national
corporation" and excusing Plaintiff from work "indefinitely."
HYD113.

In a letter dated April 8, 2002, Kemper denied Plaintiff's
appeal. It reasoned that the initial denial letter "was sent on
12/31/01" and should have been received by Plaintiff "within 3-5
days," but that Kemper did not receive the appeal until March 18,
2002, and thus Plaintiff filed it "over two weeks past the accepted
date in order to appeal." HYD109. Plaintiff countered in an April
15, 2002 letter that she did not receive the initial denial until
January 8, 2002, according to Kemper's own delivery instructions on
the Federal Express packing slip, and thus her appeal was timely.
HYD100. Kemper never responded to this letter.

According to an internal June 6, 2002 Kemper email, Kemper
realized by that point that Plaintiff was "requesting LTD," and
already possessed letters and provider notes sent by Plaintiff.
HYD094. Kemper employee Dorothy D. Perron requested that an LTD
application be sent to Plaintiff. Id. In a June 10, 2002 letter,
Kemper provided Plaintiff with an application for LTD Plan
benefits. Plaintiff was instructed to return the completed forms
"within three weeks (July 1, 2002)" and to authorize the release of

United States District Court

For the Northern District of California

her medical information to Kemper.  HYD085-087.

Plaintiff submitted her completed application for LTD benefits on June 27, 2002.  She explained that she was disabled due to chronic fatigue, causing "fevers, night sweats, dizziness, sleeplessness and _extreme_ exhaustion," and that her doctor had ordered mandatory rest.  HYD074 (emphasis in original).  She reported being able to water her plants twice weekly, walk her dog ten to twenty minutes per day, do laundry once a week and participate in two twenty-minute physical therapy sessions per week.  Id.

In a letter dated July 11, 2002, Kemper informed Plaintiff that it was investigating her disability status, that it would contact her and her physician for information on her current medical condition and treatment plan, and that it would inform her of a decision after it had received the necessary information. HYD082.  Inconsistently, Kemper drafted another July 11, 2002 letter telling Plaintiff that review of her claim and been completed, and that she was not eligible for LTD benefits.[7] HYD071.  In a fax dated July 12, 2002, Plaintiff informed Kemper that she would be represented by an attorney, Susan F. Williamson. HYD147.

In an August 7, 2002 letter, Kemper informed Plaintiff that her application for LTD benefits was denied because her June 1,

_____

[7]Plaintiffs says that she never received the July 11 denial of her benefits, which was apparently produced in connection with this litigation, and theorizes that Kemper decided not to send the letter because it had received a voice message that same day indicating that Plaintiff would be represented by counsel.  HYD274.

**United States District Court**

For the Northern District of California

2001 termination rendered her ineligible.  It cited the Proof of
Loss section of the Plan Documents requiring applicants to notify
Kemper "as soon as reasonably possible, but in no event more than
30 days after the start of the period for which you are filing a
claim."  HYD145.  This letter is virtually identical to the July 11
denial letter.  Kemper did not advise Plaintiff how she might
appeal the decision to deny her LTD benefits.

Plaintiff hired her present counsel, Richard Johnson, in 2004.
Kemper, by then known as Broadspire, provided Mr. Johnson with a
copy of Plaintiff's file on May 20, 2004.  On September 29, 2004,
Mr. Johnson filed an appeal of the decisions to deny Plaintiff both
STD and LTD benefits.  He provided updated information about
Plaintiff's medical condition, showing that an MRI had revealed a
brain lesion causing a multiple sclerosis-like "demyelinating brain
disorder, which causes and has caused, among other things:  pain,
burning and tingling sensation in Ms. Hyder's arm; tremor and loss
of motor skills; dizziness; gait disturbance; lack of balance and
coordination; severe and chronic fatigue; impaired cognitive
skills; and lack of ability to concentrate."  HYD277-78.  Mr.
Johnson's appeal was accompanied by a report from Dr. Peter Madill,
Plaintiff's current treating physician, who concluded based on a
review of her previous medical records that Plaintiff had been
"completely disabled from being able to perform any and all of the
duties of her executive position with Vodafone in May of 2001."
HYD279.  Dr. Madill also completed a Residual Functional Capacity
Questionnaire for Plaintiff in which he diagnosed a "demyelinating
brain disorder," and described Plaintiff's impairments in some

detail, concluding that she was "incapable of even 'low stress'
jobs" due to her frequent need for rest periods during the day.
HYD291.

Broadspire rejected this appeal on November 8, 2004,
reiterating its position that Plaintiff's application for STD
benefits was untimely, and stating that Plaintiff was ineligible
for LTD benefits because she "did not meet the elimination period
(26 weeks of Short Term Disability)." HYD311.  Its Appeal
Coordinator advised that Plaintiff "should have contacted her Human
Resources Department for clarification" if she was uncertain
whether to apply for STD benefits.  HYD310.  Plaintiff filed this
lawsuit on February 25, 2005 in Sonoma County Superior Court.
Defendants removed the case to federal court on April 29, 2005.

DISCUSSION

I.   Standard of Review

ERISA provides Plaintiff with a federal cause of action to
recover the benefits she claims are due under the Vodafone LTD and
STD Plans.  29 U.S.C. § 1132(a)(1)(B).  The parties dispute the
applicable standard of review; Plaintiff argues that the denial of
her claims under both the STD Plan and the LTD Plan should be
reviewed de novo, while Defendants contend that those decisions
should be reviewed for abuse of discretion.

A.   Applicable Law

The standard of review of a plan administrator's denial of
ERISA benefits depends upon the terms of the benefit plan.  Absent
contrary language in the plan, the denial of ERISA benefits is
reviewed under a de novo standard.  Firestone Tire & Rubber Co. v.

13

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

Bruch, 489 U.S. 101, 115 (1989).  However, if "the benefit plan expressly gives the plan administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the plan's terms," an abuse of discretion standard is generally applied.  Id.; Taft v. Equitable Life Assurance Soc'y, 9 F.3d 1469, 1471 (9th Cir. 1993).  The Ninth Circuit has also referred to this as an "arbitrary and capricious" standard.  McKenzie v. Gen. Tel. Co. of Cal., 41 F.3d 1310, 1314 & n.3 (9th Cir. 1994); Taft, 9 F.3d at 1471 n.2 (use of the term "arbitrary and capricious" versus "abuse of discretion" is a "distinction without a difference").

However, even where a benefit plan expressly grants discretionary authority to the plan administrator, a district court may nevertheless apply a more stringent standard of review if the plaintiff can show that a conflict of interest exists.  Hensley v. Northwest Permanente P.C. Retirement Plan & Trust, 258 F.3d 986, 995 (9th Cir. 2001).  An apparent conflict arises where the plan administrator is also the insurer.  Tremain v. Bell Indus., Inc., 196 F.3d 970, 976 (9th Cir. 1999).  In such cases, the court must "look further into the plan administrator's dual role by applying the 'less deference' test."  McDaniel v. Chevron Corp., 203 F.3d 1099, 1108 (9th Cir. 2000).  The test is two pronged: (1) the plaintiff must provide material, probative evidence tending to show an actual conflict of interest, which (2) shifts the burden of proof to the plan administrator to show that the apparent conflict did not affect the decision to deny or terminate benefits.  Id.  If there is probative evidence of an actual conflict and the plan administrator cannot rebut it, the denial of benefits is reviewed

**United States District Court**

For the Northern District of California

de novo.  Nord v. Black & Decker Disability Plan, 356 F.3d 1008,
1010 (9th Cir. 2004), on remand from Black & Decker Disability Plan
v. Nord, 538 U.S. 822 (2003).

     In a de novo review of a defendant's decision to deny
benefits, the court must decide whether a plaintiff is disabled
under the terms of the plan.  In Juliano v. Health Maintenance
Organization of New Jersey, Inc., 221 F.3d 279, 287-88 (2nd Cir.
2000), the Second Circuit held that it was the plaintiffs' burden
"to establish that they were entitled to [the] benefit [sought]
pursuant to the terms of the Contract or applicable federal law."
Following Juliano, the Court concludes that Plaintiff must carry
the burden to prove that she was disabled under the meaning of the
plan.  Sabatino v. Liberty Life Assur. Co., 286 F. Supp. 2d 1222,
1232 (N.D. Cal. 2003).  On de novo review, the Court may weigh
contradictory evidence.  Newcomb v. Standard Ins. Co., 187 F.3d
1004, 1007 (9th Cir. 1999).

     B.   STD Plan Standard of Review

     Plaintiff maintains that the STD Plan determinations should be
reviewed de novo because the language in the Plan Documents
explicitly vesting Kemper with discretion is contained in the
subsection dealing with only the LTD Plan, and therefore does not
apply to the STD Plan.

     Defendants concede that the vesting language is located only
in the subsection addressing the LTD Plan, but urge the Court to
construe the subsection to apply to both the STD Plan and the LTD
Plan.  Defendants point to an adjacent provision requiring
claimants to wait sixty days before filing a lawsuit, and argue

that a waiting period for the LTD Plan but not the STD Plan would be inconsistent.  Defendants rely on the "long tradition in contract law of reading contracts sensibly."  Beanstalk Group, Inc., v. AM General Corp., 283 F.3d 856, 869 (7th Cir. 2002) (quoting Rhode Island Charities Trust v. Engelhard Corp., 267 F.3d 3, 7 (1st Cir. 2001)).

Unlike the contract between merchants in Beanstalk Group, however, ERISA plans are not garden variety contracts and are not interpreted as such.  An ERISA plan's conferral of discretion must be "unambiguous"; "ambiguities are construed contra proferentem," in favor of the insured.  Kearney, 175 F.3d at 1090.  The vesting language, based on its location, does not unambiguously apply to the STD Plan, and therefore the Court construes the plan in Plaintiff's favor.  Accordingly, the Court reviews the denial of Plaintiff's STD benefits de novo.

C.  LTD Plan Standard of Review

With respect to the LTD Plan, Plaintiff maintains that this claim should also be reviewed de novo despite clear language vesting discretion because (1) the identity of the entity vested with discretion is ambiguous and (2) there is both an appearance of conflict and material, probative evidence tending to show a breach of duty.

The Plan Documents confer discretion on "Kemper," elsewhere defined as "Kemper Insurance Company, the Plan's insurer."  P0421. Unlike the self-funded STD Plan, however, the LTD Plan purchased insurance from Lumberman's.  Furthermore, "Kemper Insurance Company" is not Kemper's actual name, which is Kemper National

16

**United States District Court**

For the Northern District of California

Services, Inc. (later known as Broadspire).  According to

Defendants, "Kemper Insurance Companies" is a trade name that

includes Lumberman's, Kemper and Broadspire.  Defs.' Resp. to Pl.'s

Cross-Mot. at 13.  In a separate agreement, Lumberman's has granted

any authority to administer claims to Natlsco, Inc., a name by

which Broadspire has been known.

Under ERISA, a named fiduciary may delegate its fiduciary

responsibilities:

> The instrument under which a plan is maintained may expressly
> provide for procedures . . . (B) for named fiduciaries to
> designate persons other than named fiduciaries to carry out
> fiduciary responsibilities (other than trustee
> responsibilities) under the plan.

29 U.S.C. § 1105(c)(1).  The Ninth Circuit has held that where the

ERISA plan expressly gives its administrator discretionary

authority, and that administrator delegates its discretionary

authority by properly designating another fiduciary, then the

"arbitrary and capricious" standard for review still applies.

Madden v. ITT Long Term Disability Plan for Salaried Employees, 914

F.2d 1279, 1283 (9th Cir. 1990).  Plaintiff shows that there is

ambiguity regarding which entity is named as the administrator.

However, this particular ambiguity cannot be resolved in her favor.

The ambiguous reference conferring discretion on "Kemper Insurance

Company, the Plan's insurer" could be construed either to refer to

Kemper or to the insurer, Lumberman's.  If the former, then Kemper

had discretion to administer Plaintiff's claims.  If the latter,

then Kemper still had discretion to administer Plaintiff's claims

pursuant to its agreement with Lumberman's; Plaintiff has not shown

that the distinction between Kemper, Broadspire and Natlsco is

17

United States District Court

For the Northern District of California

1  material here.

2      Plaintiff contends in the alternative that there is both an

3  appearance of conflict and material, probative evidence of conflict

4  tending to show a breach of fiduciary duty.  First, the ambiguity

5  between who the insurer is and who is vested with discretion

6  suggests some apparent conflict, as do the Plan Documents which on

7  their face delegate authority to "the Plan's insurer."  At the

8  hearing, counsel for Defendants conceded the appearance of

9  conflict.

10      Plaintiff has identified several pieces of evidence tending to

11  show a breach of duty.  Plaintiff points to the two July 11, 2002

12  letters, one stating that Kemper would investigate her claim, which

13  it never did; another, possibly unsent, peremptorily denying her

14  claim as untimely.  There is no evidence that Kemper did

15  investigate her claim.  Plaintiff also notes the inconsistent and

16  misleading rationales given for denying her LTD benefits:  that she

17  was not a member of an "eligible class" due to her termination or

18  that she could not get LTD benefits due to her failure to apply for

19  and receive STD benefits.  Defendants offer no explanation for

20  these irregularities and inconsistencies.  Defendants' ultimate

21  rationale for denying Plaintiff's request for benefits is

22  procedural rather than substantive, but the mixed information given

23  suggests that the procedural issues at stake were in fact not

24  clear.  Therefore, the Court reviews the denial of Plaintiff's

25  request for LTD benefits de novo.

26  II.  STD Benefits

27      Defendants move for adjudication of Plaintiff's STD claim in

28
                                    18

**United States District Court**

For the Northern District of California

their favor, on the grounds that it is barred because (1) the STD
Plan requires that notice of a claim be provided within eight days
of injury; and, in the alternative, because (2) Plaintiff waived
her STD claim when she told the claim administrator that she was
not seeking STD benefits.  Plaintiff counters that Defendants are
estopped from asserting the eight-day deadline.

A.  Timely Notice

Plaintiff concedes that the STD Plan requires claimants to
contact Kemper within eight days of injury, and that she did not do
so.  She argues that the Plan Documents create an exception for
reasonable cause, and that her failure to contact Kemper in a
timely manner was justified.

The Plan Documents state that benefits will be reinstated if a
claimant's failure to meet Plan conditions, including the eight day
filing deadline, "was due to reasonable cause."  Plaintiff says
that she did not apply for STD benefits because she was not
provided with the Plan Documents.  Furthermore, she had been told
misleadingly by her employer that as long as Vodafone was paying
her, she did not need to file a disability claim.  Finally, she was
informed on July 18, 2001 by Mr. Rosemeyer that her eligibility for
STD benefits had expired.[8]  Plaintiff does not claim her

---

[8]Kemper never considered these reasons because it denied
Plaintiff's appeal on the ground that it was untimely.  The Court
agrees with Plaintiff that her appeal was, in fact, timely.  Kemper
incorrectly stated that its letter was sent on December 31, 2001
when it was dated January 2, 2002 and delivered, according to the
FedEx delivery slip, on January 8.  The initial denial letter
merely instructed Plaintiff to file her appeal within sixty days of
her receipt; it did not state that an appeal had to arrive within
sixty days.

impairments prevented her from filing a claim with Kemper.  <u>Cf.</u>
<u>Weyrauch v. CIGNA Life Ins. Co. of New York</u>, 416 F.3d 717 (8th Cir.
2005) (finding dispute of fact as to whether prospective claimant's
mental condition reasonably prevented him from filing a claim).
Nevertheless, Plaintiff's failure to apply for benefits was
reasonable; without a copy of the Plan Documents, she had no way of
knowing how to file a claim for STD benefits, or when the deadline
would be.  The misinformation provided by Vodafone further
undermined her ability to file a timely application.  For this
reason, the Court finds that Plaintiff is entitled to STD benefits
despite her failure to contact Kemper within eight days of her
injury.

     B.  Waiver

     Defendants further argue that Plaintiff "waived" her right to
STD benefits because of the statements made in her March 8, 2002
letter, and thus that she should be estopped from now claiming STD
benefits.

     Before estoppel can apply, the following conditions must be
met:  "1) the party to be estopped must be apprised of the facts;
2) the other party must be ignorant of the true state of facts, and
the party to be estopped must have acted so that the other party
had a right to believe that the party intended its conduct to be
acted upon; and 3) the other party relied on the conduct to its
prejudice."  <u>Hinton v. Pac. Enters.</u>, 5 F.3d 391, 396-97 (9th Cir.
1993) (quoting <u>Golden v. Faust</u>, 766 F.2d 1339, 1341 (9th Cir.
1985)).

     The first two requirements for estoppel are not met here.

20

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

Plaintiff was not apprised of the true state of facts at the time she wrote the March 8 letter.  She had been misled as to the application requirements; Kemper admonished that she "should have contacted her Human Resources Department" if she was uncertain whether to apply for STD benefits, yet officials in Vodafone's Human Resources Department did not give her correct information on that subject.  Plaintiff's statement in her March 8 letter that she did not desire to claim STD benefits referred to her appeal of Kemper's characterization of her December, 2001 phone call as an application for STD, but not LTD, benefits.  Kemper had no basis to conclude that Plaintiff intended Kemper to rely on this letter as a waiver of STD benefits.  In these circumstances, Plaintiff cannot be said to have waived STD benefits, and is not estopped from claiming them now.

Therefore, the Court finds that Plaintiff was entitled to STD benefits.

III.  LTD Benefits

Defendants move for adjudication of Plaintiff's LTD claim in their favor, on the grounds that she failed to bring her suit within the Plan Documents' three-year limitations period. Plaintiff opposes the motion on the grounds that (1) the Plan provisions are too vague to impose an enforceable time bar; (2) Defendants are estopped from asserting the three-year time bar; (3) the law provides that a limitations period cannot expire while an administrative appeal is still pending; and (4) even if the contractual bar is applied, Plaintiff's lawsuit is timely.

The contractual limitations period provides that claimants may

**United States District Court**
For the Northern District of California

not file a lawsuit more than three years after the date when "proof of your claim was required."  Defendants' interpretation is that "proof of your claim" is equivalent to "proof of the loss," which the LTD Plan elsewhere requires "not later than 30 days prior to the end of the Benefit Qualifying Period," i.e. 150 days after disability begins.  P0427.  Plaintiff, on the other hand, points to other language suggesting a likely alternative meaning for "proof of claim."  Applicants are required to notify Kemper no "more than 30 days after the start of the period for which you are filing a claim," which will prompt Kemper to send the applicant forms to fill out.  P0426.  The Plan Documents further provide that if an applicant does not receive the forms within fifteen days, then he or she "can send Kemper written proof . . . of your claim." Id. The language in this last sentence comes closest to the contractual limitations period's "proof of your claim" reference.  Cf. NM Investors Life Ins. Co. v. Sup. Ct. of Shasta County, 208 Cal. App. 3d 1070, 1073 (1989) (finding policy language requiring lawsuits to be filed within three years of "proof of loss" to be unambiguous where term used consistently).  Furthermore, this proof of claim provision does not require that an applicant submit written proof within fifteen days of notifying Kemper, but rather states that an applicant can do so.

Under this interpretation of the contractual limitations period, Plaintiff's three years did not begin to run until July 1, 2002, the date by which Kemper required that she return the completed LTD application form.  This interpretation of the Plan Documents, although contrary to Kemper's, is also reasonable.

22

United States District Court

For the Northern District of California

Because ambiguous language in ERISA Plans is interpreted against the insurer, the Court finds that Plaintiff's February, 2005 lawsuit was timely filed.

Even if Plaintiff's interpretation of the contractual limitations period were unreasonable, Defendants would be estopped from asserting that the contractual deadline for filing an action constitutes a time bar.  Kemper's June 10, 2002 letter to Plaintiff informed her that she had until July 1 to return the form providing proof of her disability, and she therefore had the right to believe that this was the date from which the limitations period would run. Defendants may not prevail in their argument that the lawsuit is time-barred where Plaintiff has relied on Defendants' conduct to her prejudice.

For these reasons, the Court denies Defendants' motion for adjudication in their favor of Plaintiff's claim for LTD benefits. Because the Court finds the Plan language too vague to impose an enforceable time bar here, it need not consider Plaintiff's alternative arguments.

IV.  Disability Determination

Plaintiff cross-moves for adjudication of her LTD claim in her favor.  Defendants oppose this motion on the grounds that Plaintiff has failed to make a prima facie demonstration that she is unable to perform the essential functions of her job.

The parties dispute whether the Court may consider the additional evidence provided by Plaintiff to Kemper along with her appeal of its denial of LTD benefits.  Defendants rely on the rule that when a court reviews a disability determination for abuse of

United States District Court

For the Northern District of California

discretion, it may only consider the evidence presented to the plan. Taft v. Equitable Life Assurance Soc'y, 9 F.3d 1469, 1471 (9th Cir. 1993). However, Plaintiff did submit this additional evidence, including Dr. Madill's report, along with her appeal of Kemper's denial of benefits.

Furthermore, this limitation does not apply on de novo review. Jebian v. Hewlett-Packard Co. Employee Benefits Organization Income Protection Plan, 349 F.3d 1098, 1110 (9th Cir. 2003). On de novo review, "new evidence may be considered . . . to enable the full exercise of informed and independent judgment." Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan, 46 F.3d 938, 943 (9th Cir. 1995). Even if Plaintiff had not submitted the additional evidence of disability with her appeal to Kemper, consideration of new evidence would be appropriate here because Kemper rejected her application on purely procedural grounds, and did not investigate her alleged physical impairments.

Defendants assert that nothing in the administrative record demonstrates that Plaintiff could not perform the essential functions of her job from the period of May, 2001 through 2003. This assertion ignores the opinion of her treating physician, Dr. Madill, based on a review of Plaintiff's medical records, that she was indeed unable to perform any of the duties of her position with Vodafone beginning in May, 2001. He specifically addresses Plaintiff's limitations, including severe fatigue, impaired cognitive skills and inability to concentrate. Dr. Madill's opinions are more detailed than the "conclusory" opinions deemed insufficient in Jordan v. Northrup Grumman Corp. Welfare Benefit

24

United States District Court

For the Northern District of California

<u>Plan</u>, 370 F.3d 869, 880 (9th Cir. 2004), and, unlike <u>Jordan</u>, Defendants do not present a more thorough or careful opinion refuting Dr. Madill's conclusions.  Nor does the fact that Plaintiff's brain lesion was not diagnosed until after her disability began mean that Plaintiff was not disabled as of May, 2001.  <u>See</u> <u>Thompson v. Standard Ins. Co.</u>, 167 F. Supp. 2d 1186, 1194 (D. Or. 2001) (rejecting insurer's contention that court could not consider later medical records as evidence of prior disability).  The evidence also indicates, and Defendants do not contest, that Plaintiff cannot perform the "essential functions of any gainful Occupation that [her] training, education and experience would allow [her] to perform," as the Plan requires after twenty-four months.

Defendants also conclusorily contend that Plaintiff is subject to the twenty-four month limitation on "self-reported conditions." Again, Defendants ignore the more recent evidence that her fatigue is a symptom of a measurable, verifiable demyelinating brain lesion.

For these reasons, the Court grants Plaintiff's motion for summary adjudication that she is disabled under the terms of the LTD plan.

V.   Offsets

Defendants move for adjudication that any benefits be offset by State disability benefits and Social Security benefits, and that her STD benefits be offset by the amount of the severance package offered by Vodafone.

Plaintiff does not oppose the offsetting of Social Security

benefits.  P0417, P0436.  At the hearing, counsel for Plaintiff
conceded that any recovery would also be offset by State disability
benefits.  Accordingly, the Court grants Defendants' motion to
offset LTD benefits by the amount of other income benefits received
as a result of that period of disability.

However, Defendants have shown no basis for their request that
Plaintiff's STD recovery be offset by the severance package offered
by Vodafone.  The Plan provides that disability benefits will be
offset by the amounts of other benefits which the recipient is
entitled to receive "as a result of the Period of Disability."
Here, the severance package was not a benefit Plaintiff was
entitled to receive as a result of the Period of Disability.  In
fact, the severance package was offered to Plaintiff on the
condition that she release any claims against Vodafone.  She
rejected these terms, and did not receive any severance benefits.
Defendants may not reduce their payments to Plaintiff on the basis
of this unaccepted offer.

CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's motion
for adjudication under Rule 52, and DENIES Defendant's motion.
Plaintiff's recovery will be offset by the amount of Social
Security and State disability benefits received as a result of that
period of disability.  Plaintiff is entitled to receive LTD
benefits.  Within two weeks of the date of this order, Plaintiff
shall submit to the Court a proposed calculation of back benefits

1  in an amount certain and a formula for calculating pre-and post-

2  judgment interest.

3      IT IS SO ORDERED.

4

5  Dated: 6/30/06

6                                              CLAUDIA WILKEN
                                               United States District Judge

7